IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THE ESTATE OF AGNES P. TAHILAN, | ) ) ) | CV. NO. 09-00430 DAE-LEK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| FRIENDLY CARE HOME HEALTH SERVICES, INC., a foreign corporation; MICHAEL LEE FOLKES; JOHN DOES 1-10; DOE CORPORATIONS; DOE "NON-PROFIT" CORPORATIONS 1-10; DOE GOVERNMENTAL UNITS 1-10; and DOE ENTITIES 1-10, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER: 1) DENYING DEFENDANT'S MOTION TO DISMISS; 2) DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND 3) GRANTING
PLAINTIFF'S ALTERNATIVE MOTION FOR ORDER STRIKING DEFENSE

On August 2, 2010, the Court heard Plaintiff's Motion for Summary

Judgment, or in the Alternative, for Order Striking Defense and Defendant's

Motion to Dismiss.  Douglas J. Sameshima, Esq., appeared at the hearing on behalf

of Plaintiff; Defendant Michael Folkes appeared pro se.  After reviewing the

motion and the supporting and opposing memoranda, the Court **DENIES**

Defendant's Motion to Dismiss (Doc. # 40), DENIES Plaintiff's Motion for

Summary Judgment  (Doc. # 29), and GRANTS Plaintiff's Alternative Motion for

Order Striking Defense (Doc. # 29).

<u>BACKGROUND</u>

The facts of this case have already been detailed in a prior order by

this Court (Doc. # 12 ) and are summarized below only as is relevant to the instant

motion.

This matter involves a loan made by Agnes Tahilan ("Tahilan"), now

deceased, to Defendant Michael Folkes ("Folkes") in May 2006.  The loan was

made so that Folkes might purchase Friendly Care Home Health Services, Inc.

("Friendly Care").[1]

The events leading up to the loan are generally undisputed.  Folkes

and Tahilan apparently met in 1987 while both lived on Maui.  (Doc. # 5 at 2.)  For

a time, Folkes and Tahilan were allegedly involved romantically.[2]  (<u>Id.</u>)  In 2003,

Folkes married and moved from Maui to California, but Folkes and Tahilan

remained in contact with each other until Tahilan's death in 2008.  (<u>Id.</u>)  In 2006,

---

[1] Friendly Care is "a service provider for homebound individuals in need of medical care and attention."  (Doc. # 5 at 2.)

[2] Although the nature of their relationship is not directly at issue in this motion to dismiss, their relationship may be an issue in Plaintiff's substantive claims against Folkes.

2

Folkes informed Tahilan that he and his wife planned to purchase Friendly Care with a loan from the Small Business Administration but did not have enough liquid cash to meet the seller's demands.  (Id.)  Tahilan allegedly offered to loan Folkes $200,000 to complete the purchase of Friendly Care.  (Id. at 3.)  In or about May 2006, Tahilan took out a home equity loan on her real property and delivered the sum of $219,560.64 to Folkes.  (Doc. # 1, Ex. A at 3.)

Folkes, with his wife, became owner of Friendly Care in 2006 and that same year, Folkes became President of Friendly Care.  (Doc. # 5, Ex. 1 ¶¶ 2-3.) This was made possible in part due to Tahilan's funding, which she wired to Folkes' bank account in California.  (Id. ¶ 7.)

Although it is undisputed that Tahilan made the loan to Folkes, the parties dispute the nature of that loan.  Since Tahilan's death, the majority of the loan principal has not been paid, and the parties dispute whether Tahilan and Folkes entered into an oral agreement that upon Tahilan's death the loan would be forgiven.  (Doc. # 5 at 4; Doc. # 8 at 8-9.)

On December 2, 2008, the Estate of Agnes Tahilan ("Plaintiff") filed suit in the State of Hawai`i Circuit Court of the Second Circuit against Folkes, Friendly Care, and unnamed individuals, corporations, partnerships, and

3

governmental units.  (Doc. # 1, Ex. A.)  The action was removed to this Court on

September 11, 2009.  (Doc. # 1.)

On September 16, 2009, Friendly Care filed a motion to dismiss based

on lack of personal jurisdiction, or in the alternative, improper venue.  (Doc. # 5.)

On November 2, 2010, the Court granted Friendly Care's Motion.  (Doc. # 12.)

Accordingly, Plaintiff's claims against Friendly Care were dismissed without

prejudice, and Friendly Care is no longer a defendant from this action.  (Id.)

In the Complaint, Plaintiff asserts eight causes of action.  Counts I, II,

and VI are contract claims brought against Folkes for borrowing money and not

paying back the principal or interest.   Count III requests that Folkes hold any

remaining funds in a constructive trust.  Counts IV and V are negligent and

fraudulent misrepresentation claims against Folkes.  Count VIII is a claim against

Folkes for allegedly using Friendly Care as an alter ego. Count VII is a conspiracy

to commit fraud claim against Folkes for allegedly conspiring to take monies

obtained from Tahilan.[3]

---

[3]"'[T]he accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'"  Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n.28 (Haw. 1999) (quoting Duplex Printing Press Co. v. Deering, 254 U.S. 443, 466 (1921)).  Plaintiff must assert a claim of

(continued...)

On May 12, 2010, Plaintiff filed a Motion for Summary Judgment, or in the Alternative, for Order Striking Defense.  ("MSJ," Doc. # 29-3.)  On June 23, 2010, Folkes filed an Opposition to Plaintiff's Motion.  ("Opp'n to MSJ," Doc. # 39.)  On the same day, Folkes filed a Motion to Dismiss, or in the alternative, Denial of Plaintiff's Motion for Summary Judgment.  ("Mot.," Doc. # 40.)  On July 9, 2010, Plaintiff filed a Reply in support of its Motion for Summary Judgment.  ("Reply to MSJ," Doc. # 47.)  The same day, Plaintiff filed an Opposition to Folkes' Motion to Dismiss.  ("Opp'n to Mot., Doc. # 48.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

---

[3](...continued)
conspiracy against Folkes and another person or entity in order to state a valid cause of action.

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. <u>See</u> <u>id.</u> at 323. The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. <u>Porter</u>, 419 F.3d at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)). If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n</u>, 809 F.2d 626, 632 (9th Cir. 1987) (internal citations omitted).

However, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment. Instead, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. <u>Id.</u> at 630 (citation omitted)

6

(emphasis added).  The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  If the factual context makes the non-moving party's claim or defense implausible, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue of trial.  <u>Id.</u> at 587.

Pursuant to Rule 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint.  <u>See</u> <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994).  A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim."  <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  <u>See</u> <u>Livid Holdings Ltd. v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the

7

formulaic elements of a cause of action.  See id. at 556-57; see also McGlinchy v.
Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations
without more are insufficient to defeat a motion to dismiss for failure to state a
claim.") (citation omitted).  "The tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal conclusions," and
courts "are not bound to accept as true a legal conclusion couched as a factual
allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations
and citations omitted).  Thus, "bare assertions amounting to nothing more than a
formulaic recitation of the elements" of a claim "are not entitled to an assumption
of truth." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("the
non-conlcusory 'factual content,' and reasonable inferences from that content,
must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal
quotations and citations omitted).

     A court looks at whether the facts in the complaint sufficiently state a
"plausible" ground for relief.  See Twombly, 550 U.S. at 570.  A plaintiff must
include enough facts to raise a reasonable expectation that discovery will reveal
evidence and may not just provide a speculation of a right to relief.  Id. at 586.
When a complaint fails to adequately state a claim, such deficiency should be
"exposed at the point of minimum expenditure of time and money by the parties

and the court." <u>Id.</u> at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

DISCUSSION

Plaintiff and Defendant's motions are inextricably intertwined, and therefore, the Court will discuss both motions together below.  State law governs the resolution of substantive issues in this diversity action.  <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>Snead v. Metro. Prop. & Cas. Ins. Co.</u>, 237 F.3d 1080, 1090 (9th Cir. 2001).

In its Motion for Summary Judgment, Plaintiff moves the Court to order summary judgment in its favor as to the monies allegedly owed to Plaintiff by Folkes, or, in the alternative, find that Folkes may not assert that he is excused from repayment of the monies alleged to be owing due to the death of Tahilan. (MSJ.)  Plaintiff's entire Motion is based on its argument that, allegedly, Folkes' only defense to his obligation to pay back the loan from Tahilan is that Tahilan made him an oral promise that the loan would be forgiven after her death, that this oral promise is governed by Hawai`i Revised Statute ("HRS") § 656-1, the Hawai`i

9

Statute of Frauds (the "Statute"), and that the Statute operates to bar Folkes'

defense. (MSJ at 10-11.)  Plaintiff does not move as to any specific count and

appears to use the entirety of its memorandum in support to argue its alternative

Motion.

In his Motion to Dismiss, Folkes similarly argues that pursuant to the

Statute, the case against him should be dismissed.  (See Mot. at 1-2).  In support,

Folkes states that a loan of $200,000 was made by Tahilan to him, no specific time

for repayment of the principal was set and more than a year past without repayment

of the principal, and there was no promise, contract, or agreement, or memorandum

or note thereof, in writing, signed by Folkes.  (Id. at 1.)  This is the entirety of

Defendant's Motion, and the only ground upon which he attacks Plaintiff's

complaint for failure to state a claim.

In order for an oral contract to be enforceable, there must be an offer,

an acceptance, and consideration.  Douglass v. Pflueger Hawaii, Inc., 135 P.3d 129

(Haw. 2006).  Consideration is an essential element of, and is necessary to the

enforceability or validity of, a contract.  Id.; Restatement (Second) Contracts § 71.

It is well settled that "[a] contract need not be in writing unless a statute requires it.

Conversely, an oral or parol contract is unenforceable where a statute requires it to

be in writing." <u>Credit Associates of Maui, Ltd. v. Carlbom</u>, 50 P.3d 431, 436 (Haw. 2002) (citing) 17A Am. Jur. 2d Contracts § 181, at 193 (1991) (footnote omitted)).

The Court first notes that the Statute of Frauds is an affirmative defense, which must be particularly plead.  Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . statute of frauds[.]").  Although Plaintiff claims that Defendant failed to so plead (Opp'n to Mot at 4), Defendant asserts the Statute in his answer to Plaintiff's Complaint.  (<u>See</u> Doc. # 8 ¶ 60.)

The Hawai'i Statute of Frauds sets forth the circumstances under which a contract is required to be in writing.[4]  The Statute provides in pertinent part:

> No action shall be brought and maintained in any of the following cases:
>
> (1)    To charge a personal representative, upon any special promise to answer for damages out of the personal representative's own estate;
>
> (2)    To charge any person upon any special promise to answer for the debt, default, or misdoings of another;

---

[4] "The federal courts, where the statute of frauds is involved, look to the law of the state of the forum, and, if by the law of the forum the statute of frauds is held to be procedural and remedial, the statute of frauds of the state of the forum is controlling." <u>Levi v. Murrell</u>, 63 F.2d 670, 671 (9th Cir. 1933) (citations omitted).

(3)     To charge any person, upon an agreement made in consideration of marriage;

(4)     Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;

(5)     Upon any agreement that is not to be performed within one year from the making thereof;

(6)     To charge any person upon any agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or commission;

(7)     To charge the estate of any deceased person upon any agreement which by its terms is not to be performed during the lifetime of the promisor, or, in the case of agreements made prior to July 1, 1977, of an agreement to devise or bequeath any property, or to make any provision for any person by will; or

(8)     To charge any financial institution upon an agreement by the financial institution to lend money or extend credit in an amount greater than $50,000;

unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized.

HRS § 656-1.  "The Hawai`i Statute of Frauds 'is substantially the same as the original English Statute of Frauds[,]' which 'was enacted almost 300 years ago to prevent "many fraudulent practices, which are commonly endeavored to be upheld by perjury and subornation of perjury".'"  Credit Associates of Maui, Ltd., 50 P.3d

at 436 (quoting <u>McIntosh v. Murphy</u>, 469 P.2d 177, 179 (1970).  In order for the

Statute to apply, the promise, contract, or agreement must be within one of the

enumerated categories.

I.      <u>Tahilan's Loan to Folkes</u>

      Defendant argues HRS § 656-1(5) applies to the instant case.  (Opp'n

at 1.)  Defendant appears to argue that the loan was within the Statute, but argues

that the loan was only oral in nature.  In support of the existence of an oral

contract, Defendant asserts:

> 1. During the nearly two years from the time of the loan until Ms.
> Tahilan's death, she never once asked for any repayment of principal
> whatsoever.
>
> 2. Throughout all of that time, Ms. Tahilan made any remaining funds
> available to [Folkes], should [he] need them.
>
> 3.Throughout all of that time, Friendly Care Home Health Services,
> Inc. made every monthly interest payment on all of the funds it had
> borrowed.

(Opp'n at 2.)[5]

---

[5] Plaintiff's Reply asserts that Folkes' Opposition contains no admissible evidence because he has failed to provide an affidavit in support of his arguments. (Reply at 2-3.)  Plaintiff is correct that Federal Rule of Civil Procedure 56 requires a party opposing summary judgment to set forth by affidavits or other admissible evidence genuine issues of material fact for trial.  <u>See</u> Fed. R. Civ. P. 56.  Folkes failed to provide <u>any</u> evidence in support of his Opposition.  However, Folkes' statements are supported by his declaration that was submitted by Plaintiff in

        (continued...)

Defendant, proceeding pro se, is apparently confused regarding application of the Statute.  Here, the fact that the loan was never in writing and the alleged promise to forgive the loan was likewise not in writing, does not automatically place either alleged obligation, whether a promise, gift or contract, within the Statute.

According to Folkes, Tahilan agreed to loan Folkes $200,000 to allow Folkes to complete the purchase of Friendly Care.  (MSJ, Declaration of Michael Lee Folkes "Folkes Decl.," Ex. 1 ¶ 6.)  Folkes accepted the offer and agreed to pay Tahilan back after he received the proceeds from a Small Business Administration ("SBA") loan.  (Id.)  Tahilan then borrowed the funds for the loan through a home equity line of credit in the amount of $250,000, used some of the money to consolidate her credit card debt, and loaned Folkes $219,560.64.  (Id. ¶ 7.) Allegedly, Folkes informed Tahilan that he only needed $200,000, but Tahilan insisted he take the entire amount.  (Id.)  Tahilan wired the money to Folkes on or about May 15, 2006.  (Id.)

---

[5](...continued)
support of its Motion.  (See MSJ, Ex. 1.) The Court notes that neither party has complied with its obligations under the Local Rules of this district.  Local Rule 56.1 sets for the requirements for motions for summary judgment and requires a concise statement of material facts from both parties to a motion for summary judgment.  See L.R. 56.1.

Thereafter, Folkes received the proceeds of the SBA loan but allegedly realized that he needed additional capital to meet Friendly Care's operating expenses. (Id. ¶ 8.) Tahilan allegedly orally agreed with Folkes that Friendly Care could continue keep the loan money from Tahilan in exchange for covering the interest payments on Tahilan's home equity loan. (Id. ¶ 9.) Tahilan and Folkes also orally agreed that "if and when it became comfortable for Friendly Care to repay the principal, it would do so in a time and manner acceptable to Friendly Care." (Id.) Friendly Care thereafter made interest only payments on Tahilan's home equity loan until the account was frozen due to Tahilan's death. (Id. ¶ 10.) The loan was never documented in writing. (Id. ¶ 11.)

In June of 2006, Friendly Care allegedly made a principal payment on the loan in the sum of $19,560.64. (Id.) Tahilan never acknowledged receipt of the funds. (Id.) Later, at some unknown date, Tahilan allegedly informed Folkes that she did not care about repayment of the borrowed funds and that "upon her demise, whenever that may occur, Friendly Care was to cease making interest payments and the loan was to be forgiven." (Id. ¶ 12.) Tahilan died at the age of 54. (MSJ, Ex. 2 ¶ 2.) Tahilan allegedly had a heart valve problem and, according to Folkes, "was not in the best of health." (Folkes Decl. ¶ 12.)

15

Plaintiff asserts that contrary to Folkes' contention that Tahilan made the promise before her death, that Tahilan was in fact worried about her financial condition when she died.  (MSJ at 11.)  Plaintiff's argument is supported by the Declaration of Imelda Balbores, Decedent Tahilan's sister and her Personal Representative, who states that Decedent was worried about being able to pay her bills and would work one to two jobs in addition to her regular employment in order to earn more money.  (MSJ, Ex. 2 ¶¶ 14-15.)

It is well settled that oral contracts invalidated by the HRS § 656-1(5) because they are not to be performed within a year include only those which absolutely cannot be performed within that period.  Credit Associates of Maui, Ltd., 50 P.3d at 436.  A promise which is not likely to be performed within a year, and which in fact is not performed within a year, is not within the Statute if at the time the contract was made there was a possibility in law and in fact that full performance could be completed before the expiration of a year.  See Credit Associates of Maui, Ltd., 50 P.3d at 436 ( "The test for determining the applicability of subsection (5) of HRS § 656-1, the counterpart of subdivision 5 of section 4 of the original Statute of Frauds, 'is not how long the performance will take, but when will it be complete.'") (quoting J. Calamari & J. Perillo, The Law of Contracts § 19.17, at 743 (4th ed. 1998)).

16

If by its terms, performance is possible within one year, however unlikely or improbable that may be, the agreement or promise is not within this subdivision of the Statute of Frauds.  Credit Associates of Maui, Ltd., 50 P.3d at 436 (quotation omitted).  It is immaterial whether or not the actual period of performance exceeded one year.  (Id.)  As the court emphasized, the one year section of the Statute

>  . . . has been interpreted to mean that it only applies to a promise or agreement which by its terms does not admit of performance within one year from the time of its making. . . . A promise to perform on completion of a dam is not within the Statute although it is contemplated that the dam will be completed in three years and in fact completion takes three years.

(Id.) (emphasis added).

Here, the original loan was to be paid off by the loan proceeds from the SBA.  Subsequently, the loan was allegedly modified to be paid back to Tahilan "if and when it became comfortable for Friendly Care to repay the principal, it would do so in a time and manner acceptable to Friendly Care[,]" and Friendly Care was to pay Tahilan's interest payments on her home equity loan (Folkes Decl. ¶ 9.)  Nothing in the facts presented to the Court evidences that it was not possible for the loan agreement to have been performed within a year.

Therefore, at the time of its making, the loan was outside the statute because by its terms, performance was possible within one year.[6]

Moreover, part performance on an oral agreement with the acceptance of benefits and reliance on the oral agreement will take the agreement outside the Statute where allowing a promisor to repudiate would constitute injustice upon the promisee. McIntosh v. Murphy, 469 P.2d 177 (Haw. 1970); Credit Associates of Maui, Ltd., 50 P.3d 431; Hawaiian Trust Co., Ltd. v. Cowan, 663 P.2d 634 (Haw. App 1983). Here, it is undisputed that Folkes, through Friendly Care, paid interest and part principal on the loan. Plaintiff asserts that to allow Defendant to now negate the agreement would serve as an injustice on the Estate of Tahilan that, in effect, loaned the money to Defendant.[7] (Opp'n to Mot. at 6-7.) Accordingly,

---

[6] Tahilan's statement that the loan was to be forgiven upon her death is not a contract modification, for which consideration is required, as further explained below. Under Hawai`i law, a contract may be orally modified if the requisites of an enforceable agreement are met. Honolulu Fed. Sav. & Loan Ass'n v. Murphy, 753 P.2d 807, 813 (Haw. App. 1988) (citation omitted). A modification of a contract must be supported by new consideration. Id. (citation omitted).

[7] Plaintiff also notes that even if the Statute was to apply, Plaintiff's claims of Fraudulent and Negligent Misrepresentation and Unjust Enrichment would survive notwithstanding the Statute. (Opp'n to Mot. at 7.)

Tahilan's loan to Folkes does not fall within the Statute of Frauds, and therefore, is not one for which a writing is required.[8]

II.     Tahilan's Alleged Forgiveness of the Loan

In its Motion for Summary Judgment, Plaintiff argues that although the loan is not invalidated by the Statute, Folkes may not rely on Tahilan's alleged promise to forgive the loan because such a promise is within the Statute and is one for which a writing is required.  In support, Plaintiff relies on HRS § 656-1(7). (MSJ at 6.)  Plaintiff additionally seems to argue that here, Tahilan's alleged promise to forgive the debt was an "oral contract to make a will" and cites Shannon v. Waterhouse, 563 P.2d 391 (Haw. 1977) for the proposition that such a promise is within the Statute.  (MSJ at 9.)  As Plaintiff concedes, the Statute is primarily used as a defense, not as a means for asserting a cause of action.  (MSJ at 10.)

As to HRS § 656-1(7), Defendant argues that: 1) he is not requiring performance of the estate so subdivision 7 is not applicable; 2) a written will is not being contested; and 3) there is no written document that meets the standard of

---

[8] The Court does not pass on the existence of an oral contract as this issue is not raised by the instant motions.

HRS § 656-1(5) and therefore no cause to remove the case from the Statute of Frauds.[9]  (Id. at 2.)

The Court finds that contrary to Folkes' assertion that he is not "charging the estate" as stated in subdivision 7, Folkes is requiring performance of Tahilan's Estate by requesting that Tahilan's Estate honor Tahilan's alleged forgiveness of the loan to Folkes "upon her demise."  HRS § 656-1(7). Accordingly, subdivision 7 applies to the case at hand because Folkes wishes to enforce an "agreement which by its terms is not to be performed during the lifetime of the promisor."  Id.

However, Plaintiff's citation to Shannon is misplaced.  The facts show that Folkes does not allege that he and Tahilan made a contract by which Tahilan agreed to will Folkes the loan money.  Instead, it appears to the Court that Folkes alleges that Tahilan gifted him this money through an "oral will" prior to her death as further detailed below.

A contractual agreement, must be supported by consideration.  See Stanford Carr Development Corp. v. Unity House, Inc., 141 P.3d 459, 476 (Haw. 2006) (citation omitted).  As the Hawai`i Supreme Court has stated:

---

[9] Defendant is again evidently confused regarding the Statute's requirements.

> Consideration is defined as a bargained for exchange whereby the promisor receives some benefit or the promisee suffers a detriment. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.  The performance may consist of (a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification, or destruction of a legal relation.

Young v. Allstate Ins. Co., 198 P.3d 666, 690-91 (Haw. 2008) (internal quotations and marks omitted).  Here, Tahilan's alleged statement that "upon her demise, whenever that may occur, Friendly Care was to cease making interest payments and the loan was to be forgiven[]" was not bargained for because it provided no benefit to Tahilan and did not obligate Folkes to do anything in return.  Douglass, 135 P.3d 129, 134 (citing Restatement (Second) Contracts § 71 ("To constitute consideration, a performance or a return promise must be bargained for")).

In contrast, a gift is, or imports, a transfer of property gratuitously, without consideration.  Almeida v. Almeida, 669 P.2d 174, 178 (Haw. App. 1983) ("A 'gift' is generally defined as a voluntary transfer of property by one person to another without any consideration or compensation therefor." (quotation omitted)).  To constitute a gift, the essential elements are (1) donative intent, (2) delivery, and (3) acceptance.  Id. (citation omitted).   Accordingly, a gift is only operative if given in the lifetime of the donor:

21

> If a gift inter vivos is to operate, it must do so in the donor's lifetime immediately and irrevocably. A gift inter vivos is a gift executed; no further act of the parties and no other contingency, such as death, are necessary to give it effect.

AMJUR GIFTS § 6 (citing <u>Shourek v. Stirling</u>, 652 N.E.2d 865 (Ind. Ct. App., 1995) ("A gift inter vivos, as distinguished from a testamentary gift or one made in contemplation of death, is one by which the donee becomes, in the lifetime of the donor, the absolute owner of the thing given."); <u>Howell v. Herald</u>, 197 S.W.3d 505 (Ky. 2006), <u>as</u> <u>modified</u>, (Feb. 24, 2006) and <u>as modified on denial of reh'g</u>, (Aug. 24, 2006); <u>Hill v. Baker</u>, 102 A. 2d 923 (Del. Super. Ct. 1953); <u>Gruen v. Gruen</u>, 496 N.E. 2d 869 (N.Y. 1986)); see also <u>Welton v. Gallagher</u>, 630 P.2d 1077 (Haw. App. 1981).  Here, Tahilan did not give Folkes a gift inter vivos because Tahilan's death was necessary for forgiveness of the loan to be operative.

A gift may also be given "causa mortis" whereby it is made in expectation of the donor's death.

> A gift causa mortis is a gift made in expectation of the donor's death and upon the condition that the property will belong fully to the donee in case the donor dies as or when anticipated, leaving the donee surviving him or her provided that the gift is not revoked in the meantime. It has been stated: similarly that a gift causa mortis is subject to the following conditions: (1) it must be made in contemplation, fear, or peril of death; (2) the giver must die of the illness or peril that he or she fears or contemplates; and (3) the

22

delivery must be made with the intent that the gift will only take effect
if the giver actually dies.

AMJUR GIFTS § 7 (citing <u>Pelton v. Meeks</u>, 993 F. Supp. 804 (D. Nev. 1998)

(applying Nevada law); <u>Stang v. McVaney</u>, 44 P.3d 41 (Wyo. 2002); <u>Albinger v.</u>

<u>Harris</u>, 48 P.3d 711 (Mont. 2002); <u>Woo v. Smart</u>, 442 S.E. 2d 690 (Va. 1994));

<u>Welton</u>, 630 P.2d at 1083 (citation omitted).  Here it is not alleged that Tahilan was

in contemplation of death or in peril of death at the time she allegedly forgave the

loan.

Instead, taking all facts in the light most favorable to Folkes as the

non-moving party, Tahilan's loan forgiveness may only be seen as testamentary as

it was a gift conditioned on her death.  Hawai`i law requires such a gift to be in

writing:

> It is necessary to constitute a complete and valid testamentary gift that
> the testator shall have executed a writing containing words which
> expressly or by implication designate both the subject of the gift and
> the person to whom it is given and where there is an entire absence of
> designation of either the subject or object of an intended gift the
> attempt to make the gift must be held to have failed since the court
> cannot create a gift where the testator himself has not made one.

<u>Mercer v. Kirkpatrick</u>, 22 Haw. 644, 1915 WL 1417 (Haw. Terr. 1915);  HRS §

560:2-502.  HRS § 560:2-502 provides that a will must be

23

(1) In writing;

(2) Signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction; and

(3) Signed by at least two individuals, each of whom signed within a reasonable time after the individual witnessed either the signing of the will as described in paragraph (2) or the testator's acknowledgment of that signature or acknowledgment of the will.

HRS § 560:2-502(a). There is no exception to the writing requirement for testamentary gifts. See HRS § 560:2-502(b). Therefore, the requirement that Tahilan's testamentary gift of loan forgiveness be in writing in order to be operative is required by both HRS § 656-1 and HRS § 560:2-502(b). There are no genuine issue of material fact as to this issue and the Court's determination is based on the facts as presented by Folkes. Accordingly, Tahilan's alleged loan forgiveness is not enforceable by this Court.

Plaintiff argues that absent any other legal excuse from payment, summary judgment should be granted on behalf of Plaintiff. (MSJ at 11.) However, although Plaintiff has successfully defended against Defendant's claim that Tahilan's alleged loan forgiveness is operative under the law, Plaintiff has failed to assert why summary judgment is appropriate as to any of its causes of action.

CONCLUSION

For the reasons stated above, the Court the Court **DENIES**

Defendant's Motion to Dismiss (Doc. # 40), DENIES Plaintiff's Motion for

Summary Judgment  (Doc. # 29), and GRANTS Plaintiff's Alternative Motion for

Order Striking Defense (Doc. # 29).


IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, August 3, 2010.


_____
David Alan Ezra
United States District Judge


Estate of Agnes P. Tahilan v. Friendly Care Home Health Services, Inc. et al., Cv.
No. 09-00430 DAE-LEK; ORDER: 1) DENYING DEFENDANT'S MOTION TO
DISMISS; 2) DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; AND 3) GRANTING PLAINTIFF'S ALTERNATIVE MOTION
FOR ORDER STRIKING DEFENSE